MILK INDUSTRY FOUNDATION,
Plaintiff,

v.

Daniel R. GLICKMAN, Secretary,
United States Department of
Agriculture, Defendant,

Northeast Dairy Compact Commission,
Defendant–Intervenor.

Civil Action No. 96–2027 (PLF).

United States District Court,
District of Columbia.

June 23, 1997.

Steven J. Rosenbaum, Covington & Burling, Washington, DC, for Milk Industry Foundation.

Thomas William Millet, IV, Marcia Sowles, U.S. Dept. of Justice, Civil Div., Washington, DC, for Daniel Glickman.

Clifford M. Sloan, Wiley, Rein & Fielding, Washington, DC, for Northeast Dairy.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Having denied plaintiff's motion for injunctive relief on December 11, 1996, the Court now turns to the parties' cross motions for summary judgment. The Court heard argument on May 21, 1997, and has considered the briefs and exhibits filed by the parties and the briefs submitted by amici from the New England region, from the Midwestern states and from the states of Louisiana, Georgia, Kentucky, Arkansas, South Carolina and West Virginia. In addition, the Court has reviewed the Secretary of Agriculture's Amplified Decision of March 20, 1997 and his Addendum of March 27, 1997, as well as the administrative record. The Court grants defendants' motions for summary judgment and denies plaintiff's motion for summary judgment.

## I. BACKGROUND

The factual background of this case was thoroughly set out in the Court's Opinion of December 11, 1996. *Milk Industry Foundation v. Glickman,* 949 F.Supp. 882, 884–88 (D.D.C.1996). The Court therefore will only briefly review the relevant facts here.

In Section 147 of the Federal Agricultural Improvement and Reform Act of 1996 ("FAIRA"), Congress consented to the Northeast Dairy Compact entered into among the states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont, but subjected its consent to several conditions. The first condition was that the Secretary of Agriculture make a finding that the implementation of the Compact was a compelling public interest in the Compact region. After soliciting and receiving public comments, on August 28, 1996, the Secretary published a one-paragraph, two-sentence finding of a compelling public interest and authorized the Compact States to implement the Northeast Dairy Compact. The Milk Industry Foundation promptly filed a motion for preliminary injunction seeking to enjoin the implementation of the Compact. Plaintiff claimed that Section 147 of FAIRA was an unconstitutional delegation of legislative power and that the Secretary of Agriculture had exercised his delegated authority arbitrarily and capriciously in violation of the Administrative Procedure Act.

The Court concluded that plaintiff was not likely to succeed on the merits of its nondelegation doctrine claim, but it found that plaintiff had a substantial likelihood of success on the merits of its APA claim. The Court concluded, however, that plaintiff could not show imminent, irreparable injury and therefore denied plaintiff's motion for preliminary injunction. It ordered expedited briefing for the parties to file cross motions for summary judgment.

On February 3, 1997, the Court granted the Secretary's motion to stay proceedings so that he could review the entire administrative record and provide an amplified decision with respect to his finding of a compelling public interest. In granting the stay, the Court specifically directed the Secretary to fully consider the Court's criticism of his August 28, 1996 finding:

As the Court tried to make plain in its December 11, 1996 Opinion, it could not even tell whether anyone at the Department of Agriculture had read all the comments in the administrative record or just counted them, since the only expressed reason the Secretary gave for his finding of compelling public interest (other than

congressional consent and state approval) was that 95 percent of the comments the Department received supported implementation of the Compact. Opinion at 8, 24–25. But "a simple head count will not do," *id.* at 24, particularly in view of the numerous concerns the Secretary himself expressed about the potential adverse effects the Compact might have, concerns presumably based on material in the record. *Id.* at 9–10, 25. "Those concerns, expressed in four paragraphs, overshadow the four reasons, expressed in two sentences, that the Secretary gave for finding a compelling public interest." *Id.* at 25.

If the Secretary wants time now "to amplify" his decision, he must make sure that the entire administrative record, including the comments submitted, is thoroughly reviewed and analyzed and approached from a fresh perspective. It is not open to the Secretary under this Court's Opinion of December 11, 1996, to approach his task with a pre-conceived view that a compelling public interest exists. His job is not merely to cull out from the favorable comments reasons to support a pre-determined decision. His responsibility is to review the *quality* of the comments in the record and to decide whether his earlier finding is justified at all.

Order of February 3, 1997 at 1–2.

After reevaluating the administrative record, the Secretary issued a second decision on March 20, 1997, in which he again found a compelling public interest for the Compact in the New England region. In his March 20, 1997 Amplified Decision, the Secretary acknowledged that "[t]he evidence in the record regarding the economic condition of dairy farmers in the Compact region is mixed." Decision of Secretary Dan Glickman on the Northeast Interstate Dairy Compact (March 20, 1997) ("Amplified Decision") at 1, Gov't Motion for Summary Judgment, Ex. A. The Secretary recognized that many comments supported implementation of the Compact as necessary to maintain a viable dairy industry and a healthy economy in the Compact region; that the dairy industry annually contributes $1.7 billion to the region's economy; that in Vermont the dairy industry represents 70 percent of the state's agricultural economy; that dairy farmers in the Compact region are going out of business; and that farm-gate milk prices in the Compact region average below what producers in many other regions receive. *Id.* at 1–2. On the other hand, the Secretary noted that those who submitted comments in opposition to the Compact argued that the decline in the number of dairy farmers in the Compact region has been less than the national average; that milk prices in the region are more favorable to dairy producers than prices in other regions of the country; that the Compact region has maintained its share of U.S. milk production; and that the Compact is not warranted by supply and demand or other economic factors. *Id.* at 2.

The Secretary expressed again, as he had in the press statement that accompanied his August 28, 1996 Finding, several concerns with respect to the adverse effects the Compact could have on low-income families. Amplified Decision at 3. The Secretary also stated that if conditions indicated that a compelling public interest in the region no longer existed, he would revoke his authorization. *Id.* at 3–4. Secretary Glickman stressed the dynamic nature of agricultural policy and indicated that he could not make just one finding of a compelling public interest "based on a single snapshot in time." *Id.* at 4. He stated that "the Department strongly believes that the assessment of a compelling public interest in the Compact region may well change over time." *Id.* The Secretary reiterated his strong belief that "the authority to withdraw or revoke [his] authorization is an essential element of any decision which finds that a compelling interest exists" and maintained that, despite the Court's conclusion to the contrary, he did indeed have the authority to revoke his authorization to implement the Compact. *Id.*

One reason the Secretary gave for his finding of a compelling public interest was that the Compact would likely result in higher milk prices and therefore, at least in the short-term, provide higher profitability for and, in turn decrease financial pressures on, small, family-sized dairy farms in New Eng-

land. Amplified Decision at 2, 4.[1] The Secretary placed great emphasis upon the importance of taking "reasonable measures to preserve small family farms." *Id.* at 2. He stated: "I do not believe that ... agricultural production should or must be dominated by large producers. America wants and still needs the family farm. This belief is obviously strongly held by the people of the Compact region." *Id.* The Secretary found that "small dairy farms are an essential part of the character and culture in the Compact region. These farms preserve open spaces, sculpt the landscape, and provide the land base for a wide diversity of recreational pursuits." *Id.* at 3. After reiterating his countervailing concern about the Compact's potential to increase the cost of milk for low income families, *id.* at 3, the Secretary concluded with a finding

> that there is a compelling public interest in the Compact region and authorize[d] implementation of the Northeast Interstate Dairy Compact. In authorizing the Compact's implementation, [the Secretary] concluded that the balance has been properly struck, given current conditions. The Compact is a short-term measure that, if implemented with common-sense and sensitivity to the needs of all affected persons and interests, can benefit the dairy producers and all citizens in the Compact region without producing adverse side effects.

*Id.* at 4–5.

Seven days after issuing his Amplified Decision, the Secretary issued an addendum to that decision, retreating from his previously strongly-expressed position that his finding relied upon his power to revoke authorization of the Compact:

> I may have inadvertently created the impression that it would have been impossible for me to authorize implementation in the absence of revocation authority. In fact, however, my finding of compelling

public interest was based on a broad array of factors which I discussed in the March 20 decision. My finding of a compelling interest was not contingent upon the existence of revocation authority.

Addendum to the Decision of Secretary Dan Glickman on the Northeast Interstate Dairy Compact (March 27, 1997) ("Addendum"), Gov't Motion for Summary Judgment, Ex. B.

On April 16, 1997, the Northeast Dairy Compact Commission unanimously voted to issue a proposed rule providing for a price increase for fluid milk in the Compact region. This proposed regulation received the approval of two-thirds of the dairy producers in a producer referendum, and the Northeast Dairy Compact Commission adopted the regulation on June 19, 1997. Defendant–Intervenor's Supplemental Submission at 1 (June 20, 1997); Defendant–Intervenor's Supplemental Submission at 1 (June 3, 1997); Defendant–Intervenor's Supplemental Submission at 1 (May 19, 1997). The price increase will take effect for a six month period beginning July 1, 1997. Defendant–Intervenor's Response to Plaintiff's Supplemental Submission at 1–2, n. 1 (June 10, 1997); Defendant–Intervenor's Supplemental Submission at 1 (May 19, 1997).[2]

## II. DISCUSSION

### A. *Nondelegation Doctrine*

In its prior opinion, the Court discussed at some length plaintiff's argument that the first condition of Section 147 of the 1996 Farm Bill—giving the Secretary of Agriculture authority to implement the Compact only upon his finding a compelling public interest in the Compact region—constitutes an unconstitutional delegation of legislative authority to the executive branch of government. The Court concluded that plaintiff was unlikely to succeed on the mer-

---

1. Congress confined the duration of the Compact to a maximum of three years from the date of enactment (the time by which the Secretary of Agriculture is required to complete a reform of federal milk marketing orders). 7 U.S.C. § 7256(3). In his March 20, 1997 Amplified Decision, the Secretary stated that the Department of Agriculture is committed to meeting the deadline of April 4, 1999 to reform and restruc-

ture milk marketing orders through a rulemaking process. Amplified Decision at 4.

2. Plaintiff maintains that the price increase will establish a $3.00 per hundredweight increase in fluid milk prices, a 21% increase. Plaintiff's Supplemental Submission at 1–2 (June 5, 1997).

**568**

its of this claim. *Milk Industry Foundation v. Glickman,* 949 F.Supp. at 889–92. After surveying the relevant case law, the Court found that

> Congress did expressly consent to the Compact, as it was required to do by the Constitution, and . . . it did not delegate its "exclusive" power to consent to an interstate compact to the Secretary of Agriculture. Under Article I, Section 10, Clause 3, Congress exercises "national supervision through its power to grant or withhold consent or to grant it under appropriate conditions." . . . In this case, Congress made its consent subject to the fulfillment of certain conditions, one being that the Secretary of Agriculture make a finding that approval of the Compact was a compelling public interest in the Northeast region. In other words, the Compact had already been conditionally consented to by the Congress when the Secretary began the process of making his public interest finding. By conditioning its consent to the Compact on the making of such a finding, Congress did not run afoul of the nondelegation doctrine. As the Supreme Court has said, "[i]t can hardly be doubted that in giving consent [to a compact] Congress may impose conditions."

*Id.* at 890–91 (citations omitted). The Court also concluded that the "compelling public interest" standard was not too vague to pass constitutional muster as an "intelligible principle." *Id.* at 891–92. Finally, the Court held that "[t]he Secretary's opinion that he can revoke his authorization to implement the Compact is troublesome but of no effect. His view of the scope of his authority cannot constitute an unconstitutional congressional delegation of legislative authority; only the Congress can do that. . . . [I]t is obvious to the Court that the Secretary has no such authority." *Id.* at 892.

The Court sees no reason to revisit plaintiff's constitutional arguments. Congress has consented to the Compact and did not impermissibly delegate its power to do so to the Secretary of Agriculture. Furthermore, regardless of what the Secretary of Agriculture may believe his powers of revocation to be, this Court has held that he does not have the power to revoke the Compact or its implementation; thus there is no unconstitutional delegation. For the reasons stated in the Court's December 11, 1996 Opinion, plaintiff's constitutional challenge to Section 147 of FAIRA must fail.[3]

### B. *Administrative Procedure Act*

■ Plaintiff argues that the Secretary's finding of a compelling public interest in the Compact region remains an arbitrary and capricious action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).[4] This Court necessarily considers that argument with the principle firmly in mind that

> [t]he scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). The D.C. Circuit has noted that this narrow standard of review is "[n]ot particularly demanding" and that the APA "requirement is satisfied if the agency enable[s] us to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did." *Republican*

---

**3.** Judge Thomas Penfield Jackson's recent decision in *Byrd v. Raines,* 956 F.Supp. 25 (D.D.C.), *probable jurisdiction noted,* —— U.S. ——, 117 S.Ct. 1489, 137 L.Ed.2d 699 (1997), concerned constitutional delegation issues totally dissimilar from those raised in this case and thus does not affect the Court's conclusions with respect to plaintiff's constitutional claim.

**4.** Defendants again raise the argument that the Secretary's finding is not "agency action" subject to judicial review under the APA. The Court rejects this argument for the reasons stated in its earlier Opinion. *See Milk Industry Foundation v. Glickman,* 949 F.Supp. at 893. The Court also rejects defendants' challenge to plaintiff's standing for the reasons stated in its December 11, 1996 Opinion. *See Milk Industry Foundation v. Glickman,* 949 F.Supp. at 885 n. 2.

*National Committee v. Federal Election Commission,* 76 F.3d 400, 407 (D.C.Cir.1996). Indeed, courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Public Citizen, Inc. v. Federal Aviation Administration,* 988 F.2d 186, 197 (D.C.Cir.1993) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). In sum, the Court's "task is to determine 'whether the agency's decisionmaking was reasoned,' ... i.e., whether it considered the relevant factors and explained the facts and policy concerns on which it relied, and whether those facts have some basis in the record." *National Treasury Employees Union v. Horner,* 854 F.2d 490, 498 (D.C.Cir.1988) (quoting *American Horse Protection Ass'n, Inc. v. Lyng,* 812 F.2d 1, 5 (D.C.Cir.1987)).

Plaintiff maintains that the Secretary's Amplified Decision, like his August 1996 Finding, still fails adequately to explain his finding of a compelling public interest because the reasons militating against Compact implementation overshadow the reasons supporting implementation. Pl.'s Motion for Summary Judgment at 8–18. Plaintiff points out that just as the Secretary did in his press statement that accompanied his August 1996 Finding, he has again voiced numerous concerns with respect to the negative impact that the Compact may have on consumers and low-income families. *See* Amplified Decision at 3. Plaintiff also emphasizes the Secretary's own findings that other regions of the country are suffering greater declines in their numbers of dairy producers and that the Northeast region is maintaining its share of U.S. milk production. *See id.* at 2.

Plaintiff also argues that the public interests that the Secretary does identify in favor of Compact implementation do not rise to the level of "compelling." Plaintiff believes that because the Secretary was charged by Congress with finding a *compelling* public interest in the Compact region, the factors, data and reasoning that provide the basis for his finding should have embodied "interests of the highest order" or "overpowering" or "irresistible" interests. *See* Pl.'s Reply at 6. Plaintiff points to the fact that the Secretary never specifically identified any one factor in

his analysis as being a *compelling* public interest.

The Court views the Secretary's discussion of the various factors he considered and the balance he ultimately struck in a different light. By considering and discussing the information he received from comments opposed to the Compact, the Department of Agriculture's own data regarding the status of dairy farmers and milk production in New England, and his own genuine concerns about low-income families and consumers, the Secretary forthrightly recognized that the public comments and relevant considerations were not all one-sided. He thus provided a balanced picture and weighed the pros and cons before finding a compelling public interest. If the Secretary had failed to mention any of the data that in some way militated against a finding of a compelling public interest, the Court might have viewed the Secretary's Amplified Decision as suspect—much as it viewed the Secretary's two-sentence August 1996 Finding. In fact, the Court specifically directed the Secretary to refrain from simply "cull[ing] out from the favorable comments reasons to support a pre-determined decision." Order of February 3, 1997 at 2. The Secretary's evaluation of data and information on both sides of the Compact debate was a proper approach for any decision-maker and certainly for a high-level government official who must make hard choices between important competing interests. Rather than supporting plaintiff's arguments that his actions were arbitrary and capricious, the Secretary's approach has better enabled the Court to do its job, assured that the Secretary's decision "results from exactly the kind of agency balancing of various policy considerations to which courts should generally defer." *Republican National Committee v. Federal Election Commission,* 76 F.3d at 408.

The Court also concludes that the Secretary was not under an obligation to tag certain interests as "compelling" in order to make his finding sufficient under the APA. In his Amplified Decision, the Secretary presented and discussed several reasons that supported his ultimate finding of a compelling public interest. Granted, when any one reason that the Secretary gave in support of

Compact implementation is examined in isolation, that one reason by itself may not provide the necessary rational link between the "facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. at 43, 103 S.Ct. at 2866. When the reasons militating in favor of Compact implementation are examined as a whole, however, the required rational connection is completed, which reasonably could lead to the Secretary's finding of a compelling public interest.

Plaintiff's next challenge to the Amplified Decision is that the Decision is based on a false premise—the premise that the Secretary has the power to revoke authorization of the Compact. As plaintiff points out, in the Amplified Decision of March 20, 1997, the Secretary explicitly predicated his compelling public interest finding upon the "essential element" of his power to withdraw or revoke his authorization to the Compact at a later date. Amplified Decision at 4. Plaintiff argues that because the Court has already held that the Secretary does not have the authority to revoke the Compact or its implementation, the Secretary's Amplified Decision cannot stand. Pl.'s Motion for Summary Judgment at 4–8.[5]

Plaintiff's argument fails because one week after the Secretary issued his Amplified Decision he issued an addendum seeking to clarify his statements regarding revocation. The Secretary expressly stated in the Addendum: "My finding of a compelling public interest was *not* contingent upon the existence of revocation authority;" rather, it "was based on a broad array of factors." Addendum at 1. Despite the obvious conflict between the position expressed by the Secretary regarding his revocation authority in his

Amplified Decision and his statements in the Addendum, the Court will defer to the Secretary's clarification. The Court rejects plaintiff's argument that the Secretary's Addendum is a "[s]udden and unexplained change," *Smiley v. Citibank,* —— U.S. ——, ——, 116 S.Ct. 1730, 1734, 135 L.Ed.2d 25 (1996), that runs afoul of the APA. The Secretary's is a reasonable clarification, particularly considering the fact that it was issued only seven days after the release of the Amplified Decision.[6]

Plaintiff also attacks the Secretary's finding that small dairy farms "preserve open spaces, sculpt the landscape, and provide the land base for a wide diversity of recreational pursuits." Amplified Decision at 3. As plaintiff points out, if small dairy farms actually provide such benefits, larger dairy farms may do so as well, and on a larger scale. Furthermore, the Secretary has failed to provide any factual basis for the general proposition that farming of any kind is necessary to achieve these ecological benefits. Nevertheless, the Secretary's discussion regarding the supposed ecological and aesthetic benefits of small dairy farms in New England is merely one element of his finding. There were many other factors that logically led the Secretary to his ultimate finding of a compelling public interest, including the goal of preserving small dairy farms, the fact that dairy producers are under financial pressure in the Compact region, and that the Compact would, at least in the short term, reduce some of the financial pressure on small dairy producers. Amplified Decision at 2. For these reasons, and because the Secretary concluded that any negative effects the Compact may have on low-income families could be mitigated through wise and sensitive im-

---

**5.** The government continues to argue that the Secretary of Agriculture has the authority to revoke the Compact. Gov't Motion for Summary Judgment at 14 n. 15; Gov't Opp'n at 3 n. 1, 5; Gov't Reply at 3. The Court specifically held in its December 11, 1996 Opinion that the Secretary did not have such a power and sees no reason to revisit this argument here. *Milk Industry Foundation v. Glickman,* 949 F.Supp. at 892 ("Since Congress never stated in Section 147 that the Secretary would have the power to revoke his approval to implement the Compact consented to by Congress, it is obvious to the Court that the Secretary has no such authority.").

**6.** If the Secretary concludes that the facts and circumstances supporting his finding of a compelling public interest have changed prior to the expiration of the Compact's three-year life span, he may return to Congress to request that it withdraw its consent to the Compact. As the Secretary points out, he may also "use other authorities given to [him] by law to ensure that consumers and others in the Compact region are treated fairly ..." Addendum at 1. What he may not do is revoke his authorization to implement the Compact, because he has no such authority.

plementation of the Compact, id. at 3, 4–5, the Secretary found that there is a compelling public interest in the Northeast region supporting implementation of the Compact.

The Secretary's Amplified Decision together with his Addendum satisfy the APA's requirement of reasoned decisionmaking. The Secretary examined the relevant data and evidence in the administrative record and explained the connection between that information and his finding that the Compact would serve a compelling public interest in the Compact region.[7] The Amplified Decision clearly described the major policy issues raised on both sides of the debate and sufficiently articulated the Secretary's reasoning as to why he found that a compelling public interest existed. The Court concludes that although the Secretary's August 1996 Finding utterly failed to provide any type of reasoned explanation, the Secretary's Amplified Decision of March 20, 1997, together with the Addendum of March 27, 1997, does meet the standards imposed by the APA.

█ Finally, while plaintiff's challenge is to the sufficiency of the Secretary's Ampli-

fied Decision and his articulation of reasons for his compelling public interest finding and not to the sufficiency of the evidence in the administrative record, there must always be some evidence in the record to support an agency's decision; otherwise, the agency's action by definition is arbitrary and capricious. *National Treasury Employees Union v. Horner,* 854 F.2d at 498; see also *Association of Data Processing Service Organizations, Inc. v. Board of Governors,* 745 F.2d 677, 684–85 (D.C.Cir.1984). In other words, the most articulate and reasoned explanation for a decision would go for naught if there were absolutely no evidence in the record to support it. While plaintiff seems not to challenge the Secretary's finding on this basis, suffice it to say that after a careful review of the administrative record, the Court finds ample evidence in the record to support each of the factors on which the Secretary relies for his decision.[8] Summary Judgment therefore will be entered in favor of defendants. An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

---

**7.** "With regard to responding to public comments, it is settled that 'the agency [is not required] to discuss every item of fact or opinion included in the submissions made to it in informal rulemaking.'" *Public Citizen, Inc. v. Federal Aviation Administration,* 988 F.2d at 197.

**8.** The primary reasons for the Secretary's decision and the most significant record references for each are as follows:

(1) The dairy industry annually contributes $1.7 billion to the region's economy. Admin. Rec., Vol. III, Comment 487 (Yankee Farm Credit Study).

(2) Dairy farmers in the Compact region are going out of business. *See e.g.,* Admin. Rec., Vol. III, Comment 486 (Yankee Farm Credit Study at Fig. 6, noting that since 1985, 41 percent of the dairy farms in New England have gone out of business); Admin. Rec., Vol. II, Comment 316 (May 16, 1996 letter from Daniel and Lise Couture to Sec. Glickman); Admin. Rec., Vol. II, Comment 318 (May 20, 1996 letter from Steven J. Bourgeois, President and CEO of Franklin Lamoille Bank to Sec. Glickman); Admin. Rec., Vol. II, Comment 324 (April 19, 1996 letter from Emanuel Hirth, General Manager of the Central Connecticut Cooperative Farmers Association, Inc. to Sec. Glickman); Admin. Rec., Vol. II, Comment 332 (May 13, 1996 letter from Sen. James M. Jeffords to Sec. Glickman); Admin. Rec., Vol. II, (Interoffice Memo from Rhode Island Division of Agriculture Chief John

Lawrence to Rhode Island House Judiciary Committee Chairman Charles Knowles, noting the number of dairy farms in Rhode Island has dropped from 87 in 1980 to 36 in 1993); Admin. Rec., Vol. I, Comment 263 (May 23, 1996 letter from Rural Vermont Rural Education Action Project to Sec. Glickman); Admin. Rec., Vol. VI, Comment 1461 (May 31, 1996 letter from Vermont Chamber of Commerce to U.S.D.A.).

(3) Farm-gate milk prices in the Compact region, adjusted for hauling, other charges, and premiums, as well as net returns, average below what producers in many other regions of the country receive. *See e.g.,* Admin. Rec., Vol. II, Comment 326 (April 30, 1996 letter from Congresswoman Nancy L. Johnson to Sec. Glickman, noting that New England farmers were paid almost $.50 per hundredweight less than their Wisconsin counterparts in 1995 after marketing costs in both regions were deducted); Admin. Rec., Vol. III, Comment 487 (June 3, 1996 letter from Sen. Leahy to Sec. Glickman; letter from Vermont Ski Areas Association) (The prices that New England's dairy farmers receive from processors have dropped by ten percent over the past decade; when adjusted for inflation, prices received by Vermont farmers dropped by twenty-seven percent over this period. ); Admin. Rec., Vol. III, Comment 486 (May 23, 1996 letter from Conn. Agric. Comm'r to Sec. Glickman);

(4) Small dairy producers in the Compact region are under financial pressure. *See e.g.,* Admin. Rec., Vol. III, Comment 509 (Yankee Farm

### ORDER AND JUDGMENT

Upon consideration of the briefs and exhibits filed by the parties and the briefs submitted by amici from the New England region, from the Midwestern states and from the states of Louisiana, Georgia, Kentucky, Arkansas, South Carolina and West Virginia, and upon consideration of the Secretary of Agriculture's Amplified Decision of March 20, 1997 and his Addendum of March 27, 1997, and upon review of the administrative record and the arguments presented by counsel in open court, and for the reasons stated in the Court's accompanying Opinion, it is hereby

ORDERED that the motions for summary judgment of defendant Daniel R. Glickman, the Secretary of Agriculture, and defendant-intervenor Northeast Dairy Compact Commission are GRANTED; it is

FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED; and it is

FURTHER ORDERED that JUDGMENT is entered for defendants.

SO ORDERED.

Credit Study at 1, 11, noting that a 1995 study of dairy farms in Vermont and Maine, the only two net milk-producing states in the Compact region, revealed that 62 percent were "financially stressed"—half of these farmers (more than a third of the total number) faced "severe stress"); Admin. Rec., Vol. III, Comment 487 (Yankee FC Study at Fig. 7, noting that from 1990–1995, net dairy farm income had dropped at a rate of 7.3 percent each year); Admin. Rec., Vol. II, Comment 308 (May 14, 1996 letter from Roderick C. and Kathleen D. White to Sec. Glickman); Admin. Rec., Vol. II, Comment 487 (May 12, 1994 letter from N.H. Dep't of Agriculture Commissioner Stephen H. Taylor to Sen. Joseph Biden); Admin. Rec., Vol. II, Comment 7 (April 27, 1996 letter from Green Mountain Bovine and Equine Veterinarian to Sec. Glickman).

(5) People in the Compact region strongly believe that the small family dairy farm should be preserved. See e.g., Admin. Rec., Vol. II, Comment 308 (May 14, 1996 letter from Roderick C. and Kathleen D. White to Sec. Glickman); Admin. Rec., Vol. II, Comment 311 (May 21, 1996 letter from John and Marcia Donald to Sec. Glickman); Admin. Rec., Vol. II, Comment 325 (April 3, 1996 letter from Kermit W. Richardson, Master National Grange of the Order of Patrons of Husbandry, to Sec. Glickman); Admin. Rec., Vol. II, Comment 215 (May 21, 1996 letter from Williamstown Savings Bank to Sec. Glickman).

(6) Higher milk prices would increase the profitability of dairy farming and reduce financial pressure on small dairy producers. See, e.g., Admin. Rec., Vol. II, Comment 332 (May 13, 1996 letter from Sen. James M. Jeffords to Sec. Glickman); Admin. Rec., Vol. II, Comment 308 (May 14, 1996 letter from Roderick C. and Kathleen D. White to Sec. Glickman); Admin. Rec., Vol. II, Comment 316 (May 16, 1996 letter from Daniel and Lise Couture to Sec. Glickman); Admin. Rec., Vol. II, Comment 324 (April 19, 1996 letter from Emanuel Hirth, General Manager of the Central Connecticut Cooperative Farmers Association, Inc. to Sec. Glickman); Admin. Rec., Vol. III, Comment 487 (June 3, 1996 letter from Sen. Leahy to Sec. Glickman); Admin. Rec., Vol. I, Comment 208 (May 21, 1996 letter from Perceptives, Inc. Film Company to Sec. Glickman).